

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WENDY MARKEY and SANDRA
STEWART,

                     Plaintiffs,

-against-

CITIGROUP, INC. and CITIGROUP
GLOBAL MARKETS, INC.,

                     Defendants.

---

09 MD 2070 (SHS)
This document relates to:
11 Civ. 9080 (SHS)

MEMORANDUM OPINION
& ORDER

SIDNEY H. STEIN, U.S. District Judge.

    Plaintiffs Wendy Markey and Sandra Stewart, former employees of defendant Citigroup, Inc.[1] bring this suit alleging solely state law claims of common law fraud; negligent misrepresentation; and violations of the Florida Securities and Investor Protection Act ("FSIPA"), Fla. Stat. § 517.301. Plaintiffs assert no federal claims for relief. Plaintiffs' claims arise from alleged misrepresentations made by Citigroup during 2007 and 2008. These claims were the subject of multiple other lawsuits before this Court, including two securities fraud class action litigations in which settlements were approved in August 2013. *See In re Citigroup Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS), 2013 WL 4427195 (S.D.N.Y. Aug. 20, 2013); *In re Citigroup Inc. Sec. Litig.*, Nos. 09 MD 2070 (SHS), 07 Civ. 9901 (SHS), 2013 WL 3942951 (S.D.N.Y. Aug. 1, 2013). The allegations concerning these misrepresentations are essentially carbon copies taken from the complaint in another action in this multidistrict litigation ("MDL") that was brought by a plaintiff represented by the same attorneys as here. That action, entitled *Odom v. Morgan Stanley Smith Barney, LLC*, Nos. 09 MD 2070, 11 Civ. 3827 (SHS) (S.D.N.Y.), was dismissed by this Court last week. *See*

---

[1] Specifically, Markey and Stewart were employed by Citigroup Global Markets, Inc. ("CGMI")—an entity that acquired their previous employer, Morgan Stanley Smith Barney, LLC, and is owned by defendant Citigroup, Inc. (Compl. ¶¶ 4, 8-11.)

*Odom v. Morgan Stanley Smith Barney, LLC*, Nos. 09 MD 2070, 11 Civ. 3827, 2013 WL 6569875, at *7-9 (S.D.N.Y. Dec. 13, 2013).

Citigroup moved to dismiss plaintiffs' complaint on essentially the same grounds it advanced successfully to support the dismissal of Odom's complaint. As with Odom's complaint, the Court finds that plaintiffs' state law claims alleging misrepresentations or omissions in connection with the sale or purchase of securities are preempted pursuant to the Securities Litigation Uniform Standards Act ("SLUSA").

## I. BACKGROUND

### A. Factual Allegations

According to the complaint,[2] Markey was hired by Citigroup Global Markets, Inc.'s ("CGMI") predecessor, Smith Barney, in 1995. (Compl. ¶ 8.) Stewart was hired by Smith Barney's predecessor, Shearson American Express, in 1984. (*Id.* at ¶ 9.) Both plaintiffs were financial advisors, and both became employees of CGMI when it acquired Smith Barney. (*Id.* at ¶¶ 8-9.) During the relevant time period, CGMI was wholly owned by Citigroup. (*Id.* at ¶ 11.)

Citigroup and CGMI encouraged employees to purchase Citigroup stock through various incentive programs, and both Markey and Stewart purchased or otherwise obtained shares of Citigroup stock during their employment. (*Id.* at ¶¶ 13-15.) Specifically, Markey received a compensation bonus of $15,000 in Citigroup stock in December 1998; she was awarded an unstated number of stock options that vested five years after an unspecified date; she began participating in "the CAP plan" in 2003 or 2004 and contributed 5-10 percent of her salary to it each year through 2007[3]; she purchased approximately 10,233 shares of Citigroup

---

[2] "In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiffs' favor." *AHW Inv. P'ship v. Citigroup Inc.*, Nos. 09 MD 2070 (SHS), 10 Civ. 9646 (SHS), 2013 WL 5827643, at *1 n.2 (S.D.N.Y. Oct. 30, 2013).

[3] The complaint does not provide any detail whatsoever about what "the CAP plan" consisted of or its operation, other than that "[t]he purchase of Citi stock through this program was held restricted for 2 years." (Compl. ¶ 14.)

2

stock "during 2006 or in earlier years"; and she acquired unspecified amounts of Citigroup securities for unknown amounts at unknown times through her 401(k) account. (*Id.* at ¶ 14.) Similarly, Stewart received options to purchase Citigroup stock that vested five years after an unspecified date; she, too, contributed 5-10 percent of her salary each year to "the CAP plan" beginning in an unspecified year "through 2007"; and she, too, purchased unspecified amounts of Citigroup stock for unknown amounts at unspecified times through her 401(k) account. (*Id.* at ¶ 15.)

The Citigroup misrepresentations alleged in this action are the same as a few of the considerably more extensive and detailed allegations advanced in the *Securities* and *Bond* actions; they are essentially verbatim copies of the misrepresentations alleged in the complaint in *Odom*. The allegations advanced in this litigation, just as in *Odom*, can be summarized as follows. Beginning in approximately 2005, Citigroup increased its exposure to subprime residential mortgages, both originating such loans and packaging them to form residential mortgage backed securities ("RMBS")—which in turn were packaged into collateralized debt obligations ("CDOs"). (*Id.* at ¶ 16.) In mid-2007, Citigroup began making public statements in conference calls and press releases that seriously underrepresented its exposure to subprime RMBS. (*Id.* at ¶¶ 18-22.) Specifically, Markey and Stewart allege that Citigroup made material misstatements during a July 20, 2007 telephone conference (*id.* at ¶ 18-19); a July 27, 2007 conference call (*id.* at ¶¶ 20-21); and an October 1, 2007 "press release and recorded telephone announcement" (*id.* at ¶ 22). Identical or similar statements are referenced in the *Securities* litigation. (*See, e.g., In re Citigroup Inc. Securities Litig.*, Nos. 09 MDL 2070 (SHS), 07 Civ. 9901 (SHS), Amended Consolidated Class Action Compl. ("*Securities* Compl.") ¶¶ 435, 827, 828, 890, 895, 1189-93; Dkt. No. 74.)

By November 2007, the company determined that downgrades in the ratings of certain tranches of subprime-RMBS-backed CDOs would have a negative effect on a significant portion of its CDO portfolio, at which point Citigroup "disclosed the actual amount of its subprime exposure" for the first time—a development that "shocked the market." (Compl. ¶¶ 24-28.) Citigroup's stock dropped precipitously following these disclosures. (*Id.* at ¶ 28.) During the same time—fall of 2007—Citigroup had also been understating its exposure to RMBS in the form of financial products

3

known as structured investment vehicles ("SIVs") by keeping the SIVs off of its balance sheet. (*Id.* at ¶¶ 29-31.) This exposure was disclosed in December 2007. (*Id.* at ¶ 31.) The combined effect was "record-breaking" losses in the last quarter of 2007. (*Id.* at ¶ 32.)

Plaintiffs allege that, notwithstanding its previous disclosures, Citigroup continued to understate its ongoing exposure to RMBS throughout 2008; repeatedly failed to take necessary write-downs or increase its loan-loss reserves to account for the risk associated with the mortgage-backed securities it had retained; and insisted that its position in the financial markets remained strong. (*Id.* at ¶¶ 34-39.) Markey and Stewart point to two specific examples in the complaint: a "mid-September 2008" statement by then-Citigroup-CEO Vikram Pandit, in which he called Citigroup "a pillar of strength in the markets" (*id.* at ¶ 37); and a November 17, 2008 "employee Town Hall" meeting, during which Pandit "again noted Citi's strong capital position" (*id.* at ¶ 38). Again, the *Securities* complaint, filed years before this action, also references these statements. (*See Securities* Compl. ¶¶ 926, 930, 963, 992, 1099, 1101, 1239.)

In August 2008, Citigroup agreed to repurchase $7.3 billion in auction rate securities ("ARS")—which it had secretly been propping up for months by injecting capital liquidity into the ARS market when demand fell short—pursuant to a settlement agreement with the New York Attorney General. (Compl. ¶ 36.) Finally, in November 2008, Citigroup accepted a $326 billion bail-out package from the federal government, intended "largely to guarantee the at-risk subprime mortgages and toxic assets Citi could not sell." (*Id.* at ¶ 39.) By January 16, 2009, the company's stock was trading at $3.50 per share—an "almost 93 percent" decrease from October 2007. (*Id.* at ¶ 42.)

In addition to these misrepresentations aimed at the market generally, Markey and Stewart represent that they were the recipient of additional false information as employees of CGMI's Pensacola, Florida office. Although plaintiffs style these allegations as "Particularized Allegations Involving Plaintiffs," they, too, are essentially verbatim repetitions of allegations in the *Odom* complaint. Specifically, in early 2007, the regional director of CGMI assured the Pensacola employees that Citigroup "was not involved in that type of business"—meaning subprime mortgages—

4

that employees "had nothing to fear from the fallout," and that they should "be patient about their holdings." (*Id.* at ¶ 43.) By mid-2007, "CGMI no longer allowed its employees to access research via Standard & Poor's," instead providing them with research from "a little known outside analyst who expressed confidence in the strength of Citi and predicted that the stock should be priced at $60-$65 within a matter of months." (*Id.* at ¶ 44.) In 2008, "[w]hen the financial crisis [had] worsened," CGMI's divisional director informed financial advisors that "Citi was very solvent and that the advisors should continue to remain optimistic." (*Id.* at ¶ 45.)

Plaintiffs allege that they held their Citigroup stock throughout 2007 and 2008 in reliance on these representations to the point where "the price of the securities dropped below their price on the dates they were acquired and the securities became substantially worthless." (*Id.* at ¶ 48.) The decline in value of Markey and Stewart's Citigroup holdings resulted in losses of "hundreds of thousands of dollars." (*Id.* at ¶ 53.)

Citigroup's announcement of the November 2008 cash infusion from the government was the "last straw" for Markey and Stewart, and the two "began taking steps to form their own company." (*Id.* at ¶ 51.) When CGMI discovered this plan, management asked plaintiffs to resign or risk being terminated; they resigned "shortly thereafter." (*Id.* at ¶ 52.)

### B. Procedural History

Plaintiffs filed their complaint in the First Judicial Circuit, Escambia County, Florida on October 28, 2011. They allege two counts of each of the following causes of action (one for each plaintiff): common law fraud, negligent misrepresentation, and violations of the Florida Securities and Investor Protection Act. Defendants removed the action to the U.S. District Court for the Northern District of Florida in November 2011.

In December 2011, following a notice of tag-along action by defendants, the Judicial Panel on Multidistrict Litigation ("JPML") conditionally transferred this litigation into the *Citigroup* multidistrict litigation ("MDL") pending in this Court. (Judicial Panel on Multidistrict Litigation, Conditional Transfer Order dated Dec. 13, 2011 ("Conditional Transfer Order"); Dkt. No. 12.) Plaintiffs did not object.

Citigroup's motion to dismiss the complaint is currently before the Court.

## II. ANALYSIS

Citigroup has advanced a number of reasons why this Court should dismiss plaintiffs' complaint: that SLUSA preempts their claims; that they lack standing to assert claims pursuant to the Florida Securities and Investor Protection Act; and that, for various reasons, the complaint fails to state a claim for fraud or negligent misrepresentation. The Court finds that SLUSA preempts Markey and Stewart's state claims, and plaintiffs assert no federal claims.

### A. Motion to Dismiss Standard

At the pleadings stage, the court accepts all factual allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a motion to dismiss, however, the complaint must state a facially plausible claim to relief, meaning plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such a showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, when alleging claims that sound in fraud, plaintiffs must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9. A complainant must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). *See also Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011) (plaintiffs must satisfy Rule 9(b) pleading requirements to state a claim pursuant to Section 517.301 of the FSIPA).

## B. The Securities Litigation Uniform Standards Act ("SLUSA") Preempts the Claims in this Litigation

Pursuant to SLUSA, "[n]o covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1).

Here, there is no dispute that Citigroup common stock is a "covered security" or that Markey and Stewart have alleged misrepresentations and omissions of material fact based on state common law. Plaintiffs' allegations also fit within SLUSA's meaning of "in connection with the purchase or sale of a covered security."[4] *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86-87 (2006). Whether Markey and Stewart's claims are preempted by SLUSA therefore depends on whether this lawsuit fits the definition of a "covered class action."

SLUSA defines a "covered class action," as relevant here, as

> any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

---

[4] Plaintiffs claim they have properly alleged a purchase or sale of Citigroup securities during the period when alleged misrepresentations were taking place, but defendants contend that plaintiffs merely assert "holder" claims—alleging that plaintiffs continued to hold securities in reliance on defendants' misrepresentations or omissions that they otherwise would have sold. The Court need not resolve this dispute for SLUSA purposes, however. The U.S. Supreme Court has held in plain terms that "SLUSA pre-empts state-law holder class-action claims" in addition to claims based on actual purchases or sales of securities. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86-87 (2006). Thus, regardless of whether plaintiffs or defendants are correct about whether the allegations here describe holder claims, plaintiffs' claims meet the SLUSA requirement that the alleged misrepresentations are "in connection with the purchase or sale of a covered security."

15 U.S.C. § 78bb(f)(5)(B)(ii). The parties' disagreement over whether plaintiffs' lawsuit fits within this definition centers upon whether it has been "joined, consolidated, or otherwise proceed[ed] as a single action for any purpose" with the two class actions—*Bond* and *Securities*—at the center of this MDL. For the same reasons set forth in the *Odom* opinion, plaintiffs' suit constitutes a "covered class action based upon the statutory or common law of any State" and therefore may not be maintained in this court pursuant to SLUSA. *See* 15 U.S.C. § 78bb(f)(1); *Odom*, 2013 WL 6569875, at *7-9.

As this Court held in *Odom*, "even if two actions have not been formally joined or consolidated, they are proceeding 'as a single action for any purpose' within the meaning of SLUSA when they are grouped together as part of an MDL." *Id.* at *8. Courts within this district have overwhelmingly reached the same conclusion in a variety of factual scenarios involving multiple individual actions or individual and class actions proceeding before one judge as part of an MDL. *See, e.g., Amorosa v. Ernst & Young LLP* (*Amorosa II*), 682 F. Supp. 2d 351, 373-77 (S.D.N.Y. 2010) ("[T]his Court holds that an action need not have been formally joined or consolidated with other actions in order to be a 'covered class action' and subject to SLUSA's preemption provision."); *Amorosa v. Ernst & Young LLP* (*Amorosa I*), 672 F. Supp. 2d 493, 517 (S.D.N.Y. 2009) *aff'd sub nom. Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412 (2d Cir. 2011); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 03 MDL 1529 (LMM), 2010 WL 3528872 (S.D.N.Y. Aug. 30, 2010) ("The present action is one of more than 50 actions pending in this district as a multidistrict litigation in which damages are sought for more than 50 people. It is plainly a covered class action which cannot be maintained in this or any state court."); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 671-72 (S.D.N.Y. 2007) ("[T]he 'individual actions,' once aggregated per SLUSA's instructions, are a 'covered class action' for purpose of SLUSA and are properly subject to the Act's limitations on mass actions."); *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377 (LAK), 2007 WL 1438753, at *3 (S.D.N.Y. May 16, 2007) *aff'd* 293 F. App'x 815 (2d Cir. 2008) (adopting Report and Recommendation in *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377 (LAK) (AJP), 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007)); *In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 245-47 (S.D.N.Y. 2004) (ten suits, several of which alleged only

8

individual claims, were proceeding as a single action when their complaints were virtually identical and they were consolidated for pretrial purposes in the same court). *Cf. In re Refco Inc. Sec. Litig.*, 859 F. Supp. 2d 644, 649 (S.D.N.Y. 2012) (observing that an "MDL proceeding coordinates discovery and other pretrial proceedings, and the actions in it are accordingly proceeding as a single action for numerous purposes").

Pursuant to this understanding of when two suits are proceeding as a single action, the Court finds that this lawsuit is properly grouped with the other litigations in the MDL—most importantly, the *Securities* and *Bond* class actions—for SLUSA purposes. Markey and Stewart's action was transferred to this Court by the JPML in December 2011, which noted that it "involve[d] questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Stein." (Conditional Transfer Order.) Markey and Stewart had an opportunity to object to the transfer of their lawsuit to this Court, as well as to its inclusion in the MDL, but never did so. (*See* Conditional Transfer Order ("[N]o objection is pending at this time.").)

The Court accepted this action as related to the MDL and designated it a "consolidated MDL case." Further, the allegations involving Citigroup's misrepresentations are materially indistinguishable from those advanced in *Odom*, and, as the Court observed in its decision granting Citigroup's motion to dismiss that complaint, the misrepresentations alleged "involve many of the same Citigroup statements alleged in the *Securities* and *Bond* complaints, as well as the same financial products, and the same alleged failures to disclose." 2013 WL 6569875, at *8. Pursuant to the "broad" interpretation Congress intended and this Court and other judges within this district have given to SLUSA, *see, e.g., WorldCom*, 308 F. Supp. 2d at 242 (quoting S. Rep. No. 105–182, at 8 (1998)), these facts are sufficient to demonstrate that this lawsuit was indeed "proceed[ing] as a single action for any purpose" with the other lawsuits in this MDL within the intendment of SLUSA.

As in *Odom*, because this lawsuit proceeded with, inter alia, the *Securities* and *Bond* class actions as "a single action for any purpose" at the time this motion was filed, and the other statutory elements are met, it is a covered class action within the meaning of SLUSA. *See Odom*, 2013 WL

6569875, at *7-9. All of the elements of SLUSA preemption are therefore present, and the proper course is to grant defendants' motion to dismiss the complaint.

### III. CONCLUSION

For the reasons set forth above and further explained in the *Odom* opinion, plaintiffs' claims are dismissed on the ground that they are preempted by SLUSA.

Dated: New York, New York
       December 20, 2013

SO ORDERED:

Sidney H. Stein, U.S.D.J.