UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIGROUP INC. SECURITIES LITIGATION | LEAD CASE<br>09 MD 2070 (SHS) |
| RENTOKIL-INITIAL PENSION SCHEME, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>         -against-<br><br>CITIGROUP, INC., SANFORD I. WEILL, CHARLES O. PRINCE, III, ROBERT E. RUBIN, and VIKRAM PANDIT,<br><br>                    Defendants. | This document relates to:<br>12 Civ. 6653 (SHS)<br><br><u>OPINION & ORDER</u> |

SIDNEY H. STEIN, U.S. District Judge.

   This litigation features a United Kingdom–based plaintiff suing New York–based defendants for alleged misrepresentations in connection with Euro Notes promoted in England and listed on Luxembourg and Copenhagen stock exchanges. Defendants have moved to dismiss this action on *forum non conveniens* grounds; that is, defendants urge that this action should be dismissed on the grounds that the courts of the United Kingdom offer a more appropriate forum for the litigation of the parties' dispute. Because the U.K. courts represent an adequate forum for this dispute, and because the United Kingdom has a greater interest in the dispute than does New York, the Court grants defendants' motion to dismiss this action.

I.  **BACKGROUND**

   Plaintiff Rentokil-Initial Pension Scheme brings this putative class action on behalf of itself and the other purchasers of 21 medium-term Euro

Notes issued and sold by defendant Citigroup, Inc., between October 12, 2005, and February 25, 2009. Plaintiff is a United Kingdom–based employee pension plan for a United Kingdom–based business services firm, Rentokil Initial plc. (First Am. Class Action Compl., Dkt. No. 39, at ¶ 21.) Defendant Citigroup is a financial services corporation incorporated in Delaware with its principal place of business in New York. (*Id.* ¶ 22.) The four individual defendants—Sanford I. Weill, Charles O. Prince, III, Robert E. Rubin, and Vikram Pandit—are all former directors or officers of Citigroup who reside in New York. (*Id.* ¶¶ 23-26.)

In its First Amended Class Action Complaint ("FAC"), Rentokil alleges that defendants intentionally misled investors by downplaying Citigroup's exposure to various investment risks. In particular, plaintiff accuses Citigroup of: (1) failing to disclose the full extent of its vulnerability to the risks of residential mortgage-backed securities ("RMBSs") and of collateralized debt obligations ("CDOs") that were backed by RMBSs (*see, e.g.*, FAC ¶¶ 7-8); (2) failing to maintain adequate loan loss reserves in light of the poor and deteriorating quality of its loan portfolio (*see, e.g., id.* ¶ 8); (3) claiming to be "well-capitalized" when, in reality, Citigroup's borrowing exceeded its market capitalization by "astonishing" amounts (*id.* ¶ 10); (4) omitting from its balance sheet until November 2007 assets held in structured investment vehicles ("SIVs"), which included subprime RMBSs, CDOs, and commercial mortgage-backed securities (*see, e.g., id.* ¶ 11); (5) misrepresenting the quality of those SIVs after disclosing them in November 2007 (*see, e.g., id.*); and (6) violating disclosure rules of the U.S. Securities and Exchange Commission ("SEC") and Generally Accepted Accounting Principles in its financial statements (*see, e.g., id.* ¶ 12).

According to the FAC, those misrepresentations were part of the offering documents for the 21 Euro Notes underlying this action, because Citigroup incorporated its misleading disclosures to the SEC into those offering documents. (*Id.* ¶¶ 27, 57.) Citigroup issued the Euro Notes, along

2

with three related Base Prospectuses, in the European Economic Area. (*Id.* ¶ 58.) According to the FAC, the Euro Notes and offering documents were therefore governed by the European Parliament's "Prospectus Directive," which delegates regulatory oversight for securities to European Union member states. (*Id.*) Under this European Parliament legislation, Luxembourg regulators were responsible for approving the Euro Notes and the accompanying prospectuses. (*Id.*) Because the United Kingdom is a member of the European Union, it recognizes offering documents that have been approved by a fellow European Union member state under the Prospectus Directive. (*See* Thewes Decl., Dkt. No. 32, at ¶ 10; Hubble Decl., Dkt. No. 33, at ¶ 60.)

Each Euro Note was listed on either the Luxembourg Stock Exchange or the Copenhagen Stock Exchange. (FAC ¶ 58.) The Euro Notes were denominated in three currencies: Euros, Pounds Sterling, and Danish Kroner. (*Id.* ¶ 2.) Even after their approval in Luxembourg and recognition in the other European Union member states, the Euro Notes were subject to ongoing obligations embodied in the European Union's Transparency Directive and Market Abuse Directive, which are incorporated into U.K. law through the U.K. Listing Rules. (Moore Decl., Dkt. No. 28, at ¶ 40(m).)

Plaintiff, allegedly induced by the misrepresentations in Citigroup's offering documents, invested in the medium-term Euro Notes in 2005 through 2009. (*Id.* ¶¶ 21, 171.) In early 2009, according to the FAC, investors learned of Citigroup's financial woes. (*Id.* ¶¶ 16, 172.) As a consequence, the FAC alleges, "the previously hidden risk inherent in [the Euro Notes] began to materialize, and investors feared the possibility of default by Citigroup." (*Id.* ¶ 173.) In the same time frame, the Euro Notes plummeted in value, losing $9 billion from an aggregate face value of $25 billion. (*Id.* ¶ 172; *see also id.* ¶¶ 15-16.)

Rentokil filed its Class Action Complaint, which alleged solely violations of U.K. law, in August 2012 and filed the FAC approximately

3

nine months later. The FAC contains the same substantive allegations as the original Class Action Complaint, but, rather than asserting solely violations of U.K. law, it asserts violations only of the Luxembourg Civil Code. (*See* FAC ¶¶ 183, 190, 201, 211.)

Defendants have now moved to dismiss the FAC under the doctrine of *forum non conveniens*. Their motion also offers two additional, alternative theories for dismissal, namely that (1) Luxembourg law does not apply to this dispute and (2) plaintiff's claims are time-barred.

## II. ANALYSIS

### A. The doctrine of *forum non conveniens* balances public and private interests.

The doctrine of *forum non conveniens* provides that a court "may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981). A district court applies federal law in determining whether to dismiss an action on the basis of *forum non conveniens*. *See Blanco v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993); *cf. Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).

The ultimate question of whether to dismiss for *forum non conveniens* "requires great flexibility," *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996), with "each case turn[ing] on its facts," *Piper Aircraft Co.*, 454 U.S. at 249. "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc); s*ee Piper Aircraft Co.*, 454 U.S. at 235. Nonetheless, several required analytical steps guide the exercise of the Court's discretion.

In the first analytical step, the Court decides what amount of deference is owed the plaintiff's choice of forum. *See Iragorri*, 274 F.3d at 73. The Court next determines whether an adequate alternative forum exists. *Id*. Third, if an adequate alternative forum exists, the Court balances the public and private interest factors enumerated by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See id.* at 508-09; *Iragorri*, 274 F.3d at 73-74.

First, as to the level of deference owed a plaintiff, "[a] domestic petitioner's choice of its home forum receives great deference, while a foreign petitioner's choice of a United States forum receives less deference." *In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 498 (2d Cir. 2002) (citing *Iragorri*, 274 F.3d at 71). Courts measure the degree of deference on a sliding scale:

> [T]he greater the [petitioner's] or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*. . . . On the other hand, the more it appears that the [petitioner's] choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands . . . .

*Iragorri*, 274 F.3d at 72.

Second, the party seeking dismissal for *forum non conveniens* must show that an adequate alternative forum exists. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000). An alternative forum is adequate if the defendants are subject to service of process in that forum and the forum permits a satisfactory remedy. *See Piper Aircraft Co.*, 454 U.S. at 254 n.22. The alternative forum's substantive law is irrelevant to the analysis except to the extent that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. In other words, what matters is that the alternative forum

"permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper Aircraft Co.*, 454 U.S. at 254 n.22).[1]

Third, if the available alternative forum is adequate, the Court next proceeds to balancing the private and public interest factors. The private interest factors set forth in *Gilbert* include: (1) "the relative ease of access to sources of proof," (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses," (3) any "possibility of view of premises," if relevant, and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." 330 U.S. at 508. The public interest factors include: (1) "[a]dministrative difficulties" flowing from court congestion, (2) whether trial in the current forum would result in the "burden" of "[j]ury duty . . . imposed upon the people of a community which has no relation to the litigation," (3) the desire to "hold[] the trial in the[] view and reach" of the "many persons" affected by the litigation, (4) "a local interest in having localized controversies decided at home," and (5) avoiding "having a court untangle problems . . . in a law foreign to itself." *Id.* at 508-09.

It is the "'well-established practice in the Southern District of New York'" to "decide[] the forum non conveniens motion on affidavits." *Constellation Energy Commodities Grp., Inc. v. Transfield ER Cape Ltd.*, 801 F.

---

[1] Even if the alternative forum has jurisdiction over the parties and permits a satisfactory remedy, the forum may still be inadequate if it "is characterized by a complete absence of due process." *Monegasque*, 311 F.3d at 499; *see RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 553-54 (S.D.N.Y. 2013). Courts are generally reluctant to find a foreign forum lacking in due process, because "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *PT United Can Co. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998). In this case, no party suggests that the proposed alternate forum—the courts of the United Kindom—fails to provide due process.

Supp. 2d 211, 218 (S.D.N.Y. 2011) (quoting *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) (en banc)). Thus, this motion will be decided "based on the pleadings, affidavits and briefs of the parties." *Alcoa S.S. Co.*, 654 F.2d at 149.

### B. The three-part test set forth in *Iragorri* reveals that the United Kingdom is a more appropriate forum than New York.

#### 1. *Plaintiff's choice of New York as a forum deserves little deference.*

Plaintiff's tenuous relationship to the Southern District of New York lessens the deference owed to its choice of the Southern District as the forum for its lawsuit. *See, e.g.*, *Pollux*, 329 F.3d at 71; *Monegasque*, 311 F.3d at 498; *Iragorri*, 274 F.3d at 72.

As a foreign plaintiff, Rentokil begins with a disadvantage in the deference analysis. After all, the law presumes that foreign plaintiffs are entitled to less deference in their choice of a U.S. forum than are U.S. plaintiffs. *See Monegasque*, 311 F.3d at 498. More specifically, plaintiff Rentokil is a foreign citizen and is the pension plan for a firm also based outside of the United States. (FAC ¶¶ 19, 21.) Rentokil's investments that form the basis for this lawsuit are securities listed on foreign stock exchanges, governed by foreign legislation, and subject to regulation by foreign authorities. (*See* FAC ¶ 58; Moore Decl. ¶ 40(m).)

However, the lawsuit is not completely devoid of connection to the United States. Defendants are all citizens or residents of New York (FAC ¶¶ 22-26), the FAC alleges that several material facts occurred in New York (*id.* ¶¶ 27, 70), and the parties agree that "a substantial amount of evidence related to plaintiff's claim is located in New York" (Mem. of Law in Support of Defs.' Mot. to Dismiss the Am. Compl., Dkt. No. 25, filed Apr. 15, 2013 ("Defs.' Mem.") at 20; *see* Pl.'s [Corrected] Mem. in Opp. to Defs.' Mot. to Dismiss, Dkt. No. 34, filed May 17, 2013 ("Pl.'s Mem.") at 13.)

The Court will therefore defer only minimally to Rentokil's decision to bring its lawsuit in the Southern District of New York.

### 2. *The courts of the United Kingdom constitute an adequate forum for this dispute.*

The U.K. courts offer a perfectly adequate forum in which Rentokil may assert its claims. There appears to be no dispute that all parties here are subject to jurisdiction in the courts of the United Kingdom and are amenable to service there.[2] Thus, the parties' arguments concerning the adequacy of the U.K. courts center on whether that alternative forum "permits litigation of the subject matter of the dispute." *See Pollux*, 329 F.3d at 75.

As a general matter, U.S. courts "regard the British courts as exemplary in their fairness and commitment to the rule of law." *Wiwa*, 226 F.3d at 101. Moreover, because plaintiff's original complaint asserted claims based exclusively on U.K. law (Class Action Compl., Dkt. No. 1, ¶¶ 160, 164-165), "there can be no doubt that England permits litigation to resolve commercial disputes of the type presented in this case," *Pollux*, 329 F.3d at 75. The United Kingdom recognizes such causes of action as deceit, negligent misrepresentation in contract, negligent misrepresentation in

---

[2] "The alternate forum will normally be adequate so long as the defendant is amenable to process there. . . . An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement." *DiRienzo v. Philip Svcs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000) (citations omitted), *vacated on other grounds*, 294 F.3d 21 (2d Cir. 2002). Although Citigroup—the principal defendant—has already specifically consented to jurisdiction in the United Kingdom (*see* Defs.' Mem. at 19), there is no affirmative statement in the record that the individual defendants similarly consent. Counsel for the individual defendants is directed to notify the Court in writing within seven days of the entry of this Opinion and Order whether the individual defendants consent to jurisdiction over them by the courts of the United Kingdom.

8

tort, and breach of contract—claims that are the subject matter of this dispute. (*See* Moore Decl. ¶¶ 12, 22, 36.) A fair judiciary that recognizes plaintiff's causes of action certainly offers an adequate forum for this dispute.

### 3. *The balance of interests tilts in favor of the United Kingdom as the preferred forum for this dispute.*

Having determined that Rentokil's choice to litigate in the United States deserves little deference and that the United Kingdom would offer an adequate alternative, the Court now proceeds to the task of determining whether litigation in the United Kingdom or in New York would better serve the interests of justice and convenience. *Gilbert*'s various private and public interest factors guide this analysis. *See* 330 U.S. at 508-09.

#### a. The Private Interest Factors

##### i. Access to Sources of Proof

The sources of proof in this action are distributed between New York and the United Kingdom. According to defendants, substantial evidence is currently in the United Kingdom: "all of plaintiff's relevant witnesses and documentary evidence are located in the U.K.," and the "Citi employees involved in the issuance of the Euro Notes are likely to be located in England or elsewhere in Europe." (Defs.' Mem. at 20.) Rentokil responds to these assertions without disputing their veracity. Instead, Rentokil counters that the location of witnesses and documents abroad "bears little relevance" to this analysis, both because Citigroup has already produced documents in New York and because electronic discovery is available to quickly transmit documents over a vast distance. (*See* Pl.'s Mem. at 19.) The parties further agree that a substantial amount of other documentary evidence is currently in New York. (*See* Defs.' Mem. at 20; Pl.'s Mem. at 13.) This factor is, therefore, in equipoise: substantial evidence is located

9

both in the United States and the United Kingdom. In addition, all parties concede that advances in electronic discovery diminish the weight of any imbalance that may exist in this factor. (*See* Defs.' Mem. at 21; Pl.'s Mem. at 19.)

                ii.   Subpoena and Attendance of Witnesses

The ease of obtaining witness testimony is essentially even as between New York and the United Kingdom. The relevant personnel at Rentokil and Citigroup are located in the United Kingdom and elsewhere in Europe. (*See supra*, section II.B.3.a.i.) Rentokil has expressed an interest in calling United States–based expert witnesses. (*See* Pl.'s Mem. at 13.) Thus, in a U.K. trial, any U.S. witnesses may lie outside of compulsory process or convenient attendance, and the same is true of any U.K. witnesses in a U.S. trial. The United Kingdom–based witnesses are the most obviously relevant fact witnesses (*i.e.*, the relevant agents of the parties), whereas plaintiff's preferred experts are the only United States–based witnesses in whose testimony any party has expressed an interest. Thus, if this factor tilts toward either forum, it tilts slightly in favor of the United Kingdom.

               iii.   Possibility of View of the Premises

This factor is not relevant to this financial litigation.

               iv.   Other Practical Problems

The broad, residual private interest factor of "all other practical problems that make trial of a case easy, expeditious and inexpensive," as set forth in *Gilbert*, 330 U.S. at 508, also does not militate strongly for one forum or another. Plaintiff contends that the related litigations in the Southern District of New York make this District a more convenient forum for this litigation. (*See* Pl.'s Mem. at 16, 20-21.) The related actions to which Rentokil refers involve different plaintiffs, are based on different investment instruments, and have no consolidated proceedings with this action. In fact, the specific related actions cited by Rentokil—namely, *In re*

*Citigroup Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS); *In re Citigroup Inc. Securities Litig.*, No. 07 Civ. 9901 (SHS); and *Int'l Fund Mgmt. S.A., et al. v. Citigroup Inc., et al.*, No. 09 Civ. 8755 (SHS)—are no longer pending before this Court. The Court therefore sees no efficiency to be gained by the various litigations sharing a forum. Ultimately, the United Kingdom and New York are roughly equal in practical convenience for the parties, because each forum is in close proximity to substantial documents and witnesses.

        b.    *The Public Interest Factors*

                i.    Court Congestion

The first public interest factor—the effect of court congestion upon the litigation—similarly does not support either forum. Neither party contends that the U.K. courts are congested. As for the Southern District of New York, although this District is historically busy, there is no reason to believe that court congestion would slow the pace of this litigation. *Cf.* Administrative Office of the U.S. Courts, "United States District Courts—National Judicial Caseload Profile," Sept. 2013 (indicating that the median time from filing to disposition of a civil case is 8.3 months). Moreover, given the U.S. Senate's confirmation of six new judges to the Southern District bench in the past year, it is once again true that "the recent filling of all judicial vacancies and the resulting full complement of judges for the District makes this [congestion] concern of little or no present significance." *Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 146 n.5 (2d Cir. 2000); *see* U.S. Senate Committee on the Judiciary, "Judicial Nominations and Confirmations: 113th Congress," *available at* http://www.judiciary.senate.gov/nominations/113thCongress.cfm (last visited Feb. 4, 2014). The prospect of court congestion therefore does not affect this analysis.

> ii. Jury Duty, Public Trial, and the Local Interest

Several public interest factors rely on an understanding of which location has a greater interest in the dispute. New York's interest in this dispute is limited to the fact that defendants reside here. The United Kingdom's interest is far greater. Plaintiff is located in the United Kingdom. (FAC ¶ 19.) Additionally, the United Kingdom is a member of the European Union, whose European Parliament and European Council enacted the "Prospectus Directive" that govern the relevant securities in this case. (*See* Thewes Decl. ¶¶ 8-10; Hubble Decl. ¶¶ 9, 60.) Moreover, the Citigroup employees involved with the issuance of these securities apparently reside in the United Kingdom or Europe. *See supra*, section II.B.3.a.i. Certain of the Euro Notes at issue in this dispute were denominated in Pounds Sterling (and none in U.S. Dollars) (FAC ¶ 2), further illustrating that the center of the litigation's gravity is decidedly in the United Kingdom, and not in the United States.

Given New York's minimal interest in this litigation, it would be unfair to impose jury duty upon residents whose community has little stake in the outcome. Litigation in New York would also place any trial outside the view and reach of those U.K. residents who are affected by this dispute either through their relationship to plaintiff, through their relationship to Rentokil Initial plc, or as constituents of the European legislative and administrative entities that regulate the securities at issue. In addition, more generally, the United Kingdom's interest in having "localized controversies decided at home," *see Gilbert*, 330 U.S. at 508-09, supports that forum as preferable in this case.

> iii. Issues of Foreign Law

The final public interest consideration is the avoidance of U.S. courts determining issues of foreign law. This factor militates squarely against further litigation in New York. Although the parties disagree as to what law applies in this case, no party believes that U.S. law applies. Whether

Luxembourg law applies—as plaintiff asserts—or whether U.K. law applies—as defendants contend—this factor inveighs against a U.S. court exercising jurisdiction over this action.

### III. CONCLUSION

At bottom, the relevant financial transactions and regulatory oversight took place in the United Kingdom and continental Europe. In this litigation, a U.K. plaintiff has alleged claims under Luxembourg law regarding European-listed and European-regulated securities. That the U.K. plaintiff has sued New York defendants does not shift the center of this controversy across the Atlantic and into New York. The balance of interests clearly favors the United Kingdom as the more appropriate forum for this action.[3]

Accordingly, it is hereby ORDERED that the First Amended Class Action Complaint is dismissed on the grounds of *forum non conveniens*, on the condition that counsel for defendants Weill, Prince, Rubin, and Pandit notify the Court in writing, within seven days of the entry of this Opinion and Order, that Weill, Prince, Rubin, and Pandit consent to jurisdiction over them by the courts of the United Kingdom.

Dated: New York, New York
February 6, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[3] Having declined to exercise jurisdiction over this action, the Court need not and does not address defendants' alternative grounds for dismissal: that plaintiff's claims are time-barred and that Luxembourg law does not apply to plaintiff's claims.